S.I.R.P.R.

FILED - KZ
May 9, 2025 12:57 PM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems_ Scanned by ES / 5/ 9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1:25-cv-542
Robert J. Jonker
United States District Judge

ARTHUR LEE BEEN, JR.,

      Plaintiff,

          No.

-v-

HON. ANGELA PASULA,
District Judge Berrien County,

GRETCHEN WHITMER,

      James Grady ab.
COL. ~~JOSEPH GASPER~~, Director
of the Michigan State Police,
in their official capacities

          JURY DEMAND

      Defendant.

---

## PETITION FOR EMERGENCY EX PARTE
## RESTRAINING ORDER AND REQUEST FOR HEARING

**Respectfully submitted,**

Arthur L. Been Jr., Pro Se,
34871 28th Ave
Paw Paw, MI 49079
(405)-906-9999
artb@hamptonlaw.net

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

ARTHUR LEE BEEN, JR.,

                        Plaintiff,

                                                No.

-v-

HON. ANGELA PASULA,
District Judge Berrien County, Michigan

GRETCHEN WHITMER, Governor
State of Michigan,

COL. JAMES F. GRADY II, Director
of the Michigan State Police,
in their official capacities

                        Defendant.

_____\

## PETITION FOR EMERGENCY EX PARTE RESTRAINING
## ORDER, INJUNCTION AND REQUEST FOR HEARING

COMES NOW, the Plaintiff, Arthur L. Been Jr., Pro Se, and moves this Court to

issue an Ex Parte Emergency Restraining Order to prohibit an action that will cause

irreparable injury.

A.      PARTIES

1.      Plaintiff:      Arthur L. Been Jr., is a resident Van Buren County, State of

Michigan.

2.      **Defendant:** Hon. Angela Pasula, District Judge of the Berrien County Trial

2

Court, 811 Port St, St Joseph, MI 49085, was working under color of State law when the allegations arose.

3.      **Defendant:**  GRETCHEN WHITMER, Governor of the State of Michigan, 111 S. Capital Ave., Lansing Michigan, 48933.

4.      **Defendant:**  COL. JAMES GRADY, Director of the Michigan State Police, in their official capacities, were working under color of State law when the allegations arose.

**B.      JURISDICTION AND VENUE**

5.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress under 42 U.S.C. § 1983 for the deprivation of rights secured by the U.S. Constitution.

6.      Plaintiff's request for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court to protect and effectuate a judgment from the United States District Court for the Eastern District of Michigan.

7.      Venue is proper pursuant to 28 U.S.C. § 1391.

**C.      INTRODUCTION**

8.      There has been ongoing litigation in a class action case in the Eastern District of Michigan, *Does v. Whitmer, et. al.*, Case No. 2:22-cv-10209-MAG-CI. *See* [Exhibit 1 Amended Judgment] The case has addressed the constitutionality of Michigan's Sex Offenders Registration Act (SORA).

9.      Plaintiff is subject to registration requirements for a conviction from another

3

jurisdiction, that involves no victim and is a member of the "non-Michigan offense subclass" in *Does v. Whitmer, et. al.*.

10.    The "non-Michigan offense subclass" is defined as "members of the primary class who are or will be subject to sex offender registration under Mich. Comp. Laws §§ 28.722(r)(xi); (t)(xiii); (v)(ix); or 28.723(1)(d), for a conviction or adjudication from a jurisdiction other than Michigan. (ECF No. 177, PageID.9378)

11.    SORA does not delegate authority to the Michigan State Police (MSP) to make determinations about which individuals with non-Michigan convictions must register, or what tier level or requirements should apply.

12.    However, in practice the MSP makes unilateral decisions about whether someone with a non-Michigan conviction is subject to registration, and if so, what tier level and requirements apply.

13.    If the non-Michigan offense has not been listed or tiered in the spreadsheet, the frontline staff are instructed to consult an analyst.

14.    Within the MSP, staff do not always agree about whether a person with an out-of-state offense must register in Michigan, or what a person's registration requirements should be.

15.    On April 22, 2025, Honorable Mark A. Goldsmith issued an Amended Judgment (Dkt. 177) [Exhibit 1] finding SORA unconstitutional as applied to Non-Michigan Offenses. The Amended Judgment states:

> Plaintiffs are granted summary judgment on Count XI with respect to their claims that (i) Defendants' process for registering people with non-Michigan convictions violates the Due Process Clause of the Fourteenth Amendment

4

to the U.S. Constitution; and (ii) imposing longer or harsher requirements on people with non-Michigan convictions than people with Michigan convictions violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

Defendants are permanently enjoined from requiring registration under SORA or enforcing SORA against Ms. Doe, Doe G, and **the non-Michigan offense subclass** based on a conviction or adjudication from a jurisdiction other than Michigan.

(ECF No. 177, PageID.9388)

16.     Plaintiff asserts that when there are issues with the constitutionality of a statute as here and a judicial determination that a statute is unconstitutional, the Courts and Judges such as the Defendant Judge should be concerned, as persons bound[1] by the decision should err even before the date the judgment becomes final as it creates constitutional concern.

17.     Further Plaintiff asserts that the District Court's opinion regarding Count IX – Compelled Admission of "Understanding" violates the first Amendment of the US Constitution. The Court stated:

a.     Plaintiffs are granted summary judgment on Count IX, which challenged the requirement that registrants attest that they understand their registration duties under SORA.

b.     Requiring the Plaintiffs and primary class members to attest to understanding their registration duties under SORA violates the protection against compelled speech of the First Amendment of the U.S. Constitution.

c.     Defendants are permanently enjoined from requiring Plaintiffs and the primary class members to attest that they understand their obligations

---

[1]**Persons Bound:** Fed. R. Civ. P. 65(d)(2) sets out the persons who can be bound by an injunction: the parties, their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation" with them. Given that SORA is enforced by hundreds of law enforcement agencies throughout the state, the district Court followed the language of Rule 65.

5

under SORA. (ECF No. 177, PageID.9387)

**D.    GROUNDS**

> **I.    Michigan Sex Offender Registration Statutes are vague as they vest law enforcement with discretion that should be defined under the statutes.**

**ARGUMENT AND AUTHORITY**

18.    Plaintiff was charged in the State Court with a violation of Sex offender Registration in May of 2024. It was alleged that Plaintiff gave false information.

19.    In April of 2024 Plaintiff was contacted by MSP at the phone number on Plaintiff's registration paperwork. MSP informed Plaintiff he had to register, and Plaintiff complied on May 1, 2024.

20.    It is important to discuss why the MSP contacted Plaintiff, because before April 2024 he had never received Notice and that is due to the fact that on April 6, 2020, the United States District Court for the Eastern District of Michigan, *Doe v. Snyder et al.*, Case No. 2:16-cv-13137, ECF No. 91, PageID.1847 issued an "INTERIM ORDER DELAYING ENTRY OF FINAL JUDGMENT, PRELIMINARILY ENJOINING REPORTING REQUIREMENTS, AND DIRECTING PUBLICATION." The Federal Court stated:

> IT IS FURTHER ORDERED that Defendants, and their agents are PRELIMINARILY ENJOINED from enforcing registration, verification, school zone, and fee violations of SORA that occurred or may occur from February 14, 2020, until … and thereafter until registrants are notified of what duties they have under SORA going forward. This interim injunctive relief conforms with and implements this court's order that registrants cannot be held strictly liable for SORA violations. (ECF No. 84, PageID.31.)

(ECF No. 91, PageID. 1850)

6

21.    Coloma Township Police Chief Wes Smigielski alleges that Plaintiff gave false information by reporting his address as 6800 Pine Court Unit B because it was not habitable. This has been where Plaintiff registered since he moved to Coloma Township.

22.    Admittedly, the dwelling was never habitable since the day it was purchased from the previous owner. *See* Letter of condemnation to previous owner Brock Bitner. [Exhibit 2] This property was a preexisting non-conforming structure.

23.    Here, is where the statutes are vague because he had an RV (Motorhome) parked on the property on Unit B side and this is why he registered to Unit B. *See* [Exhibit 3]

24.    The RV shared the sewer, electric and water with 6800 Pine Court Unit B. The RV had been parked on Unit B side almost since the purchase of the property. The RV provided "a regular place of lodging" pursuant to MCL 28.722(o) and that cannot be disputed because the facts supported that the RV was habitable but the Officer chose not to inspect the RV. MCL 28.722(o) which defines Residence as:

> (o) "Residence", as used in this act, for registration and voting purposes means that **place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging.** If a person has more than 1 residence, or if a person has a residence separate from that of his or her husband or wife, that place at which the person resides the greater part of the time must be his or her official residence for the purposes of this act. If a person is homeless or otherwise lacks a fixed or temporary residence, residence means the village, city, or township where the person spends a majority of his or her time. This section shall not be construed to affect existing judicial interpretation of the term residence for purposes other than the purposes of this act.

25.    Officer Smigielski based his determination on the fact that Unit B lacked an occupancy permit and was not in livable conditions, indicating a false SOR registration.

PH at 18-19. Further MCL 28.722(o) also specifically provides If a person is homeless or otherwise lacks a fixed or temporary residence....

26.    The RV qualifies as a residence under statute or at least it should. Officer Smigielski was asked "[s]omebody could -- and those -- the mobile -- or the RV's are used or can be used to sleep in, correct?" He replied: "That -- sure, yes." PH at 16. Additionally, since the Defendant had the RV listed on his SORA registration, it is reasonable to inspect the RV to determine whether the Defendant had any personal belongings there.

27.    Another issue with SORA is whoever puts information into the database is not always reliable and the information is only reliable to the point of the person putting the information into the database.

28.    Here there has been no evidence of a statute, policy, regulation that would prohibit using a motor home as a place of lodging if a unit is not habitable. There is nothing in the statutes about registration requirements if a person is occupying an RV on the property of an uninhabitable dwelling. Plaintiff relied solely on the language of "fixed or temporary residence." However, it appears that Plaintiff must have been incorrect because of the allegations that have been lodged against him. Officer Smigielski's interpretation of the statutes also invites ambiguities as in the case at bar because how is a person to ever understand their reporting duties.

29.    How can Defendant understand an unwritten legislative intent?

30.    On May 8, 2024, Plaintiff updated/registration with the Van Buren County Sheriff's Office. However, Plaintiff was still residing in Coloma Township and chose not to return after Officer Smigielski alleged that Plaintiff did not reside at the residence.

31.    In a hearing that was held in the Berrien County Trial Court in front of Defendant Judge Officer Smigielski was asked if he based his sole opinion that Plaintiff did not reside at the address based on the habitability of the dwelling. Officer Smigielski said NO.

32.    Officer Smigielski returned to the property after the preliminary hearing and took body cam footage of Unit B, while the motor home was still parked on Unit B side and chose not to even look at or the motor home. So, Officer Smigielski's decision was based solely on the habitability of Unit B.

33.    Plaintiff's date of birth is November 1974, which under registration requirements the Defendant must register twice a year, May-November, because he is classified as a Tier II offender. But how the MSP concluded that Plaintiff is a Tier II offender is somewhat puzzling.

34.    Plaintiff previously lived in Indiana and was classified by Indiana as a Tier I offender required to register for 10 years. Thus, with the Order discussed above (ECF No. 177) In this regard SORA is void for vagueness and the Court's decision that it is unenforceable should carry much weight even before the effective date of the judgement to ensure that that the Defendants comply with the demands of the constitution and not subject an individual to the loss of liberty when a statute has been determined unconstitutional by a Federal District Judge.

35.    While Justice GORSUCH was still on the Tenth Circuit Court of Appeals, he wrote for the Court. "The constitutional due process guarantee traces its roots to the Magna Carta and the effort to deny capricious kings the "power of destroying at pleasure,"

9

what Blackstone called the "highest degree" of tyranny. 1 William Blackstone, Commentaries *133. So perhaps it comes as little surprise that we should look to the history of efforts to tame arbitrary governmental action to determine whether and under what conditions the conduct at issue is accepted as a necessary incident of organized society— or whether it is associated with the sort of whimsical sovereign the due process guarantee was designed to guard against. *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082-83 (10th Cir. 2015)

36.    When interpreting the meaning of a statute, our primary goal is to discern the intent of the Legislature by first examining the plain language of the statute. *In re MCI Telecom. Complaint*, 460 Mich. 396, 411, 596 N.W.2d 164 (1999); *Sun Valley Foods Co. v. Ward,* 460 Mich. 230, 236, 596 N.W.2d 119 (1999). Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. *Herman v. Berrien Co.*, 481 Mich. 352, 366, 750 N.W.2d 570 (2008); *Macomb Co. Prosecutor v. Murphy*, 464 Mich. 149, 158, 627 N.W.2d 247 (2001). When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted. *Danse Corp. v. Madison Hts.,* 466 Mich. 175, 182, 644 N.W.2d 721 (2002). This Court's opinion involved a judicial construction of an ambiguous statute where the rule of lenity applies. Lenity only applies if the statute is ambiguous or "in absence of any firm indication of legislative intent." *People v. Denio,* 454 Mich. 691, 700, 564 N.W.2d 13 (1997). quoting *People v. Wakeford,* 418 Mich. 95, 113-114, 341 N.W.2d 68 (1983). Here, lenity should be applied under the circumstances because Defendant was denied an "advanced notice of the conduct being prohibited," where his RV served the basis of an  otherwise fixed or

temporary residence but ignored by Defendant judge.

37.     For almost a decade, courts have repeatedly held Michigan's Sex Offenders Registration Act (SORA), M.C.L. § 28.721 et seq., to be unconstitutional. *See Does #1-5 v. Snyder*, No. 12-cv-11194 (E.D. Mich.) (Does I); *Roe v. Snyder*, No. 16-cv-13353 (E.D. Mich.); *Does #1-6 v. Snyder*, No. 16-cv-13137 (E.D. Mich.) (Does II); *People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021).

38.     Despite these rulings, the State of Michigan continued to enforce a statute Defendants knew to be unconstitutional. Finally, faced with the imminent entry of class-wide permanent injunction in *Does II* barring enforcement of major portions of SORA, the 2020 legislature made minor amendments to the law. But the legislature left intact the core constitutional defects of the law—which continues to impose extensive burdens, in most cases for life, without any individualized assessment of whether such burdens are justified.

39.     This Plaintiff is forced to bring litigation in an attempt to vindicate his rights much like the rights of other litigants thru the history of Michigan's SORA.

40.     After years of litigation, and based on an extensive record, Judge Robert Cleland in 2015 held portions of the statute unconstitutional on due process and First Amendment grounds. *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015); *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015). On appeal, the Sixth Circuit Court of Appeals held that SORA imposes punishment and that the retroactive application of SORA's 2006 and 2011 amendments violates the U.S. Constitution's Ex Post Facto Clause. *See Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert denied,* 138 S.Ct. 55 (2017).

41.     Defendants ignored the Sixth Circuit's and the district court's decisions and

simply continued to subject tens of thousands of other Michigan registrants to SORA.

42.     Further litigation ensued. *In Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) (Goldsmith, J.), plaintiff Mary Roe—who wass also Plaintiff Mary Roe—had to go to court to protect herself from prosecution under SORA in order to keep her job, even though the Sixth Circuit had already held that the provision barring her employment was unconstitutional. **But even after Ms. Roe secured an injunction protecting her from prosecution,** the state simply continued enforcing SORA against everyone else.

43.     Six new plaintiffs—five of whom are also Plaintiffs in Eastern District's case then challenged the state's continued application of the unconstitutional statute in a class action lawsuit which sought to enforce the *Does I* decisions on behalf of all Michigan registrants. *Does #1-6 v. Snyder,* No. 16-cv-13137 (E.D. Mich. 2016) (Cleland, J.) (*Does II).* The Court repeatedly deferred its decision to allow the legislature time to revise the law. When the legislature failed to do so, the Court granted summary judgment to plaintiffs on all counts in February 2020, but deferred entry of judgment to give the legislature one last chance to act. *Does #1-6 v. Snyder*, 449 F. Supp. 3d 719, 737–39 (E.D. Mich. 2020).

44.     Faced with entry of a permanent injunction against much of the old SORA, the legislature finally responded. Although a work group of stakeholders (including representatives from law enforcement, prosecutors, corrections, survivors' groups, the governor's offices, legislative staff, and the American Civil Liberties Union of Michigan (ACLU)) had been working for more than a year to craft a law that would be both constitutional and evidence-based, the legislature ignored those efforts. Instead, it pushed through Public Act 295 of 2020, which the governor signed, and which took effect on

March 24, 2021.

45.    SORA 2021 makes only minor changes to Michigan's registry which fundamentally constrains the lives of some 45,000 Michiganders, as well as almost 10,000 people now living out of state. Like its predecessor, SORA 2021 imposes a vast regime of restrictions, including continuous reporting and public shaming, that affect virtually every facet of registrants' lives.

46.    SORA 2021 continues to impose life-altering burdens with no individualized assessment or review. SORA 2021 continues to treat all registrants—regardless of the circumstances of their offense, the passage of time, their age, their rehabilitation, their health, or their cognitive and physical abilities—as if they pose a high and irremediable risk to public safety. And SORA 2021 brands everyone on the public registry as a current threat to the community with no evidence they are.

E.    **VOID FOR VAGUENESS**

47.    Under the void-for-vagueness doctrine, courts assess whether (i) "ordinary people, exercising ordinary common sense, can understand [the statute] and avoid conduct which is prohibited" and (ii) the statute "establishes minimal guidelines to govern enforcement." *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir.1993). The statute provides minimal guidelines that Govern enforcement. The doctrine is intended to "ensure fair notice to the citizenry" and "provide standards for enforcement by the police, judges, and juries." *Columbia Nat. Res., Inc. v. Tatum,* 58 F.3d 1101, 1104 (6th Cir.1995). "The second prong— providing minimal guidelines to govern the conduct of law enforcement— constitutes the more important aspect of the vagueness doctrine." *Belle Maer Harbor v.*

13

*Charter Twp. of Harrison*, 170 F.3d 553, 556–557 (6th Cir. 1999). "[A] failure to define a term within a statute or ordinance does not render the statute unconstitutionally vague, where the common meaning of the word provides both adequate notice of the conduct prohibited and the standards for enforcement." *Id.* at 558.

48.    In our constitutional order, a vague law is no law at all. The vagueness doctrine rests on the twin constitutional pillars of due process and separation of powers. *See Sessions v. Dimaya*, 584 U.S.___, 138 S.Ct. 1204, 1212-1213 (2018) (GORSUCH, J., concurring in part and concurring in judgment) The United States Supreme Court has sometimes adopted the narrower construction of a criminal statute to avoid having to hold it unconstitutional if it were construed more broadly, but it has not invoked the canon to expand the reach of a criminal statute to save it. To do so would risk offending the same due process and separation of powers principles on which the vagueness doctrine itself rests and would sit uneasily with the rule of lenity's teaching that ambiguities about a criminal statute's breadth should be resolved in the defendant's favor—Lenity.

49.    When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again. *U.S. v. Davis*, 588 U.S.___, 139 S.Ct. 2319, 2223, 204 L.Ed.2d 757 (2019). Vague laws contravene the "first essential of due process of law" that statutes must give people "of common intelligence" fair notice of what the law demands of them. *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *see Collins v. Kentucky*, 234 U.S. 634, 638, 34 S.Ct. 924, 58 L.Ed. 1510 (1914). Vague laws also undermine the Constitution's separation of powers and the democratic self-

governance it aims to protect. Only the people's elected representatives in the legislature are authorized to "make an act a crime." *United States v. Hudson*, 7 Cranch 32, 34, 11 U.S. 32, 3 L.Ed. 259 (1812). Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide. See *Kolender v. Lawson*, 461 U.S. 352, 357-358, and n. 7, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89-91, 41 S.Ct. 298, 65 L.Ed. 516 (1921); *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1876).

**F.        CONCLUSION**

50.    Plaintiff states that prosecution under an unconstitutional statute should be prohibited because irreparable injury will occur if convicted before the effective date of the Eastern District's Order. The Defendants and its agents have repeatedly ignored the Court and issuing an injunction will protect the judgment issued in the Eastern District of Michigan. *See* 28 U.S.C. § 2283 "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." An injunction would not be barred in this case as it will protect and effectuate the judgment of the Court.

51.    Plaintiff is set to begin jury trial in Defendant Judge's Court on May 13, 2025, where irreparable injury may occur where a jury will be left at some confusion. *See* [Exhibit 4 email from prosecutor] Jury confusion is certainly a possibility, especially considering the fact that there has been a determination that the statute violates the

15

constitution. To obtain a TRO, a plaintiff must show specific facts in a verified complaint that clearly demonstrate an immediate or irreparable injury will result to the plaintiff before the adverse parties may be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). When considering whether to issue a TRO, this Court considers (1) whether Plaintiffs have shown a substantial likelihood it will prevail on the merits of its claim, (2) whether there is a threat of irreparable harm to Plaintiffs if the TRO does not issue, (3) whether issuance of a TRO will substantially harm others, and (4) whether issuance of the TRO is in the public interest. *Essroc Cement Corp. v. CPRIN, Inc.,* 593 F.Supp.2d 962, 967 (W.D. Mich. 2008) (Maloney, C.J.). "Ex parte temporary restraining orders are not doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No.* 70, 415 U.S. 423, 439 (1974) (citation omitted).

## G.    RELIEF REQUESTED

WHEREFORE, the Petitioner respectfully prays this Court will issue an Order Granting a temporary injunction. Petitioner request this Court hold a hearing to address the constitutionality of SORA and then issue a permanent injunction.

Respectfully submitted,

s/

Arthur L. Been Jr., pro se,
34871 28th Ave
Paw Paw, MI 49079
(405)-906-9999
artb@hamptonlaw.net

16

**H.      CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. A.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May 9, 2025

Signature of Plaintiff

**Arthur L. Been Jr.,**
Printed Name of Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of May 2025, I hand delivered the above and forgoing to the Clerk of Court and that the Clerk will electronically transmit using the ECF System to the registered ECF registrant:

Arthur L. Been Jr.,

17