🚩 KeyCite Yellow Flag
Distinguished by Does v. Whitmer, E.D.Mich., May 19, 2025

2025 WL 825907
Only the Westlaw citation is currently available.
Court of Appeals of Michigan.

IN RE Ryan Douglas HARDER.

Ryan Douglas Harder, Petitioner-Appellant,

v.

State of Michigan, Respondent-Appellee.

No. 368645
|
March 14, 2025, 11:47 AM

**Synopsis**
**Background:** Following release from sex offender registry requirements in Iowa, where sex offender was convicted of committing lascivious acts with a child, offender, who was a Michigan resident, filed a petition to be relieved of the requirement to register with the Michigan sex offender registry under the Sex Offenders Registration Act (SORA). The Circuit Court, Ottawa County, denied offender's petition. Offender appealed.

**Holdings:** The Court of Appeals, Kelly, J., held that:

[1] elements of Iowa offense and Michigan offense were substantially similar, and thus offender was required to register under SORA for conviction under Iowa statute;

[2] offender's relief from his requirement to register with Iowa's sex offender registry did not preclude Michigan from requiring offender to continue to register;

[3] sex offender registration under SORA does not impose a criminal punishment on offenders convicted of sex-related offenses, and thus does not constitute cruel or unusual punishment;

[4] offender did not have his right to travel infringed upon by being required to register under SORA;

[5] offender's inability to petition for removal from the sex offender registry, as was allowed for Tier-I offenders, did not violate offender's equal-protection rights;

[6] provision of SORA, which required offender to register for substantially similar offense to one listed in SORA, was not unconstitutionally vague; and

[7] process by which offender was required to register under SORA did not constitute a violation of his due process rights.

Affirmed.

Swartzle, P.J., concurred in result only and dissented in part by separate opinion.

West Headnotes (57)

| [1] | **Criminal Law** 🔑 Review De Novo |
|---|---|
| | An appellate court reviews de novo constitutional issues and questions of statutory interpretation. |

| [2] | **Statutes** 🔑 Plain Language; Plain, Ordinary, or Common Meaning |
|---|---|
| | **Statutes** 🔑 Context |
| | In every case requiring statutory interpretation, courts seek to discern the ordinary meaning of the language in the context of the statute as a whole. |

| [3] | **Statutes** 🔑 Undefined terms |
|---|---|
| | **Statutes** 🔑 Dictionaries |
| | When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase. |

| [4] | **Constitutional Law** 🔑 Presumptions and Construction as to Constitutionality |
|---|---|
| | Statutes are presumed to be constitutional unless their unconstitutionality is readily apparent. |

[5]   **Constitutional Law** ⚿ Burden of Proof

A party challenging the constitutionality of a statute has the burden of proving its unconstitutionality.

[6]   **Statutes** ⚿ Validity

A party challenging the facial validity of a statute must show that no circumstances exist under which it would be valid.

[7]   **Criminal Law** ⚿ Review De Novo

An appellate court reviews de novo a challenge that a statute is void for vagueness when the challenge is not made under the First Amendment. U.S. Const. Amend. 1.

[8]   **Constitutional Law** ⚿ Statutes in general

To evaluate a vagueness challenge, an appellate court must examine the entire text of the statute and give the words of the statute their ordinary meanings.

[9]   **Infants** ⚿ Enticement, luring, and inducement in general

Statute for the crime of accosting, enticing, or soliciting child for immoral purposes contains alternative elements because the crime can be committed by accosting, enticing, or soliciting a child with intent to induce or force the child to commit a proscribed act, or by encouraging a child to commit a prescribed act. Mich. Comp. Laws Ann. § 750.145a.

[10]  **Infants** ⚿ Enticement, luring, and inducement in general

Prosecution may secure a conviction under statute for the crime of accosting, enticing, or soliciting child for immoral purposes by proving that the defendant (1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act. Mich. Comp. Laws Ann. § 750.145a.

[11]  **Infants** ⚿ Enticement, luring, and inducement in general

The prosecution may secure a conviction under statute for the crime of accosting, enticing, or soliciting child for immoral purposes under alternative bases that the defendant (1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act. Mich. Comp. Laws Ann. § 750.145a.

[12]  **Mental Health** ⚿ Persons and offenses included

Under the categorical approach for determining whether two crimes are substantially similar for purposes of the Sex Offenders Registration Act (SORA), a court may not consider the actual facts of the defendant's conduct underlying the crime; rather, the court must compare the elements of the two crimes. Mich. Comp. Laws Ann. § 28.721 et seq.

[13]  **Mental Health** ⚿ Persons and offenses included

If a state-law crime allows for a conviction of a broader category of conduct than could support a conviction under the elements of the generic crime, then two crimes are not alike under the categorical approach for determining whether two crimes are substantially similar for purposes of the Sex Offenders Registration Act (SORA); however, if a state-law conviction could be sustained under the generic crime and the state statute contains a smaller category of conduct than the generic crime, then the two crimes are alike. Mich. Comp. Laws Ann. § 28.721 et seq.

[14]  **Courts** ⚿ Decisions of United States Courts as Authority in State Courts

Although lower federal court decisions may be persuasive, they are not binding on state courts.

**[15]** Infants ⚷ Enticement, luring, and inducement in general

A conviction of accosting a minor for immoral purposes requires proof that the defendant intended to induce or force that child to commit a proscribed act. Mich. Comp. Laws Ann. § 750.145a.

**[16]** Mental Health ⚷ Persons and offenses included

Elements of Iowa offense of lascivious acts with a child and Michigan offense of accosting, enticing, or soliciting a child were substantially similar, and thus sex offender, who lived in Michigan, was required to register under Michigan Sex Offenders Registration Act (SORA) for conviction under Iowa statute, even though Iowa statute provided a marriage exception not reflected in Michigan statute; elements of solicitation common to the two offenses were similar, both offenses required the victim be a child and the defendant an adult, and Iowa requirement that the solicitation be to engage in a sex act corresponded with Michigan requirement of solicitation of an immoral act, an act of sexual intercourse, an act of gross indecency, or any other act of depravity or delinquency. Iowa Code Ann. § 709.8; Mich. Comp. Laws Ann. §§ 28.721 et seq., 750.145a.

1 Case that cites this headnote

**[17]** Judgment ⚷ Adjudications operative in other states; full faith and credit

The Full Faith and Credit Clause of the United States Constitution requires the courts of each state to honor the actions of another state's courts. U.S. Const. art. 4, § 1.

**[18]** Judgment ⚷ Adjudications operative in other states; full faith and credit

A judgment entered in another state is presumptively valid and subject to recognition in Michigan under the Full Faith and Credit Clause, which requires that a foreign judgment be given the same effect that it has in the state of its rendition. U.S. Const. art. 4, § 1.

**[19]** Judgment ⚷ Adjudications operative in other states; full faith and credit

The purpose of the Full Faith and Credit Clause is to prevent the litigation of issues in one state that have already been decided in another. U.S. Const. art. 4, § 1.

**[20]** Motions ⚷ Collateral attack on orders

Typically, only a jurisdictional defect will allow a court to entertain a collateral attack on a court order from another state. U.S. Const. art. 4, § 1.

**[21]** Judgment ⚷ Enforcement in other states

A foreign judgment is treated as a Michigan judgment and Michigan law applies to its enforcement. Mich. Comp. Laws Ann. § 691.1172.

**[22]** Mental Health ⚷ Persons and offenses included

Sex offender's relief from his requirement to register with Iowa's sex offender registry did not preclude Michigan from requiring offender to continue to register with the Michigan's sex offender registry for conviction in Iowa for lascivious acts with a child; registration requirement in Michigan stemmed from the Iowa conviction, not from the Iowa registration requirement, and enforcement of the conviction in Michigan was subject to Michigan's Sex Offenders Registration Act (SORA), not Iowa law. U.S. Const. art. 4, § 1; Iowa Code Ann. § 709.8(3); Mich. Comp. Laws Ann. § 28.721 et seq.

1 Case that cites this headnote

[23] **Sentencing and Punishment** ⚬ Scope of Prohibition

**Sentencing and Punishment** ⚬ Excessiveness and Proportionality of Sentence

Michigan's prohibition of cruel or unusual punishment is considered to provide broader protections than the federal counterpart prohibiting cruel and unusual punishments; accordingly, if a sentence is constitutional under Michigan's standard, it is constitutional under the Eighth Amendment as well. U.S. Const. Amend. 8; Mich. Const. art. 1, § 16.

[24] **Sentencing and Punishment** ⚬ Scope of Prohibition

**Sentencing and Punishment** ⚬ Punishment

The determination whether a statute imposes a cruel or unusual punishment involves a two-step inquiry: the first step assesses whether the statute imposes a criminal punishment as opposed to some civil regulatory burden; if the statute imposes criminal punishment, then the second step is to determine whether the punishment is cruel or unusual. U.S. Const. Amend. 8; Mich. Const. art. 1, § 16.

[25] **Sentencing and Punishment** ⚬ Proportionality

Inquiry into whether a criminal punishment is cruel or unusual concerns whether the punishment is so grossly disproportionate that it is unconstitutional. U.S. Const. Amend. 8; Mich. Const. art. 1, § 16.

[26] **Mental Health** ⚬ Registration and Community Notification

**Sentencing and Punishment** ⚬ Sex offenders

Sex offender registration under the Sex Offenders Registration Act (SORA) does not impose a criminal punishment on offenders convicted of sex-related offenses, and thus does not constitute cruel or unusual punishment. Mich. Comp. Laws Ann. § 28.721 et seq.

[27] **Constitutional Law** ⚬ Equal Protection

The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[28] **Constitutional Law** ⚬ Equal protection

Generally speaking, legislation challenged on equal protection grounds is accorded a presumption of constitutionality. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[29] **Constitutional Law** ⚬ Similarly situated persons;  like circumstances

**Constitutional Law** ⚬ Statutes and other written regulations and rules

When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[30] **Constitutional Law** ⚬ Similarly situated persons;  like circumstances

To be considered similarly situated, for the purpose of an equal protection challenge, the challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[31] **Constitutional Law** ⚬ Statutes and other written regulations and rules

Courts examine three factors when determining whether a law violates the Equal Protection Clause: the character of the classification in question; the individual interests affected by the

classification; and the governmental interests asserted in support of the classification. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[32]  **Constitutional Law**  Differing levels set forth or compared

In order to perform an equal protection analysis, courts must first determine which constitutional test applies, strict scrutiny or the rational basis test. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[33]  **Constitutional Law**  Strict scrutiny and compelling interest in general

**Constitutional Law**  Levels of scrutiny; strict or heightened scrutiny

When state legislation creates a classification scheme that is based on suspect factors, such as race, national origin, ethnicity or alienage, or that affects a fundamental interest, courts determining whether an equal protection or due process violation occurred apply a high standard of review, labeled strict scrutiny. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[34]  **Constitutional Law**  Strict scrutiny and compelling interest in general

**Constitutional Law**  Levels of scrutiny; strict or heightened scrutiny

Under strict scrutiny, courts determining whether an equal protection or due process violation occurred require the State to demonstrate that its classification has been precisely tailored and it must serve a compelling governmental interest. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[35]  **Constitutional Law**  Statutes and other written regulations and rules

**Constitutional Law**  Reasonableness, rationality, and relationship to object

Under the traditional or rational basis test, courts determining whether an equal protection or due process violation occurred will not strike down a statute if the classification scheme it creates is rationally related to a legitimate governmental purpose. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[36]  **Constitutional Law**  Due process

**Constitutional Law**  Equal protection

Under the deferential standard of the rational basis test, the burden of showing a statute to be unconstitutional for violation of equal protection or due process rights is on the challenging party, not on the party defending the statute. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[37]  **Constitutional Law**  Equal protection

**Constitutional Law**  Statutes and other written regulations and rules

The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review for alleged equal protection violations; a classification will stand unless it is shown to be essentially arbitrary. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[38]  **Constitutional Law**  Freedom of Travel and Movement

The constitutional right to travel concerns the right of free interstate migration. U.S. Const. Amend. 14.

[39]  **Constitutional Law**  Compelling interest test

The right to interstate travel is a fundamental right; accordingly, a statute affecting that right is reviewed under strict scrutiny. U.S. Const. Amend. 14.

[40]  **Constitutional Law**  Freedom of Travel and Movement

A state law implicates the constitutional right to travel when it actually deters travel, when

impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right. U.S. Const. Amend. 14.

[41] **Constitutional Law** ⚷ Compelling interest test

When reviewing a statute that implicates the constitutional right to travel, even a compelling state interest may be served only by means which do not burden unnecessarily the exercise of the right to travel. U.S. Const. Amend. 14.

[42] **Constitutional Law** ⚷ Sex offenders

**Mental Health** ⚷ Sex offenders

Sex offender, who was convicted of lascivious acts with a child in Iowa, did not have his right to travel infringed upon by being required to register under Sex Offenders Registration Act (SORA) in his home state of Michigan; offender was a lifelong resident of Michigan and immediately returned to and resided there after his conviction in Iowa, and offender presented no explanation as to how his registration requirement actually impacted any interstate travel. U.S. Const. Amend. 14; Mich. Comp. Laws Ann. §§ 28.723(1)(d), 28.724(6)(d).

1 Case that cites this headnote

[43] **Constitutional Law** ⚷ Registration and notice

**Mental Health** ⚷ Sex offenders

Sex offender, who was a Tier-II offender under Sex Offenders Registration Act (SORA) based on his out-of-state conviction for lascivious acts with a child, was not similarly situated to Tier-I offenders, and thus his inability to petition for removal from the sex offender registry, as was allowed for Tier-I offenders, did not violate offender's equal-protection rights; classification of offenders based on the severity of their offenses was not arbitrary, but instead based on the seriousness of their offenses in order to alert the public to their potential danger for longer periods of time. U.S. Const. Amend. 14; Mich

Const. art. 1, § 2; Mich. Comp. Laws Ann. § 28.728c(1).

[44] **Constitutional Law** ⚷ Statutes and other written regulations and rules

The Legislature may draw a distinction between classes of persons without violating equal protection rights so long as the classification is not arbitrary or invidious and the classification scheme is rationally related to a legitimate governmental purpose. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[45] **Constitutional Law** ⚷ Registration and notice

**Mental Health** ⚷ Sex offenders

To classify sex offenders, and prescribe sex offender registration requirements on the basis of the seriousness of their offenses, is rationally related to a legitimate governmental purpose and thus does not violate equal protection rights. U.S. Const. Amend. 14; Mich Const. art. 1, § 2.

[46] **Criminal Law** ⚷ Presentation of questions in general

Failure to properly preserve an issue for appeal results in waiver of that issue.

[47] **Criminal Law** ⚷ Presentation of questions in general

An appellate court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented.

[48] **Constitutional Law** ⚷ Registration

**Mental Health** ⚷ Sex offenders

Sex offender's registration requirement under Sex Offenders Registration Act (SORA),

following his out-of-state conviction for lascivious acts with a child, did not constitute an unconstitutional ex post facto punishment, since registration requirement did not constitute a criminal punishment. U.S. Const. art. 1, § 10, cl. 1; Mich. Const. art. 1, § 10; Mich. Comp. Laws Ann. § 28.723(1)(d).

[49]  **Constitutional Law** ← Constitutional Prohibitions in General

The critical question for an ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date. U.S. Const. art. 1, § 10, cl. 1; Mich. Const. art. 1, § 10.

[50]  **Constitutional Law** ← Penal laws in general
**Constitutional Law** ← Punishment in general
**Constitutional Law** ← Evidence

A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a committed crime; or (4) allows the prosecution to convict on less evidence. U.S. Const. art. 1, § 10, cl. 1; Mich. Const. art. 1, § 10.

[51]  **Constitutional Law** ← Sexually dangerous persons; sex offenders
**Mental Health** ← Sex offenders

Provision of Sex Offenders Registration Act (SORA), which required sex offender to register following his out-of-state conviction for lascivious acts with a child, as a substantially similar offense to one listed in SORA, was not unconstitutionally vague; SORA provided fair notice that soliciting a minor for sex was an offense requiring registration, provided fair notice that violation of a substantially similar law of another state required registration, and provision did not lend itself to any interpretation that would allow a trial court to arbitrarily decide whether two crimes were substantially similar. Mich. Comp. Laws Ann. §§ 28.722(t)(i), 28.722(t)(xiii), 28.725(12), 750.145a.

[52]  **Constitutional Law** ← Statutes
**Constitutional Law** ← Overbreadth in General

There are three grounds on which a statute may be determined unconstitutionally vague: (1) it is overbroad, impinging on First Amendment freedoms, (2) it fails to provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unlimited and unstructured discretion on the trier of fact to determine whether an offense has occurred. U.S. Const. Amend. 1.

[53]  **Constitutional Law** ← Certainty and definiteness; vagueness

An challenge to a statute for being unconstitutionally vague in violation of due process rights must be considered in light of the facts at issue. U.S. Const. Amend. 14.

[54]  **Constitutional Law** ← Certainty and definiteness; vagueness

To afford proper notice of the conduct proscribed, as required to not be considered unconstitutionally vague in violation of due process rights, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. U.S. Const. Amend. 14.

[55]  **Constitutional Law** ← Certainty and definiteness; vagueness

For a statute to be sufficiently definite, as required to not be considered unconstitutionally vague in violation of due process rights, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words. U.S. Const. Amend. 14.

[56] **Constitutional Law** 🔑 Classification and registration; restrictions and obligations

**Mental Health** 🔑 Sex offenders

Process by which sex offender was required to register under the Sex Offenders Registration Act (SORA), following his out-of-state conviction for lascivious acts with a child, did not constitute a violation of his due process rights, despite offender's inability to participate in initial determination by state police as to his registration; offender was heard before the trial court, a neutral body, which did not merely rubber stamp the state police decision, but conducted its own analysis of offender's registration requirement. U.S. Const. Amend. 14; Mich. Comp. Laws Ann. § 28.723(1)(d).

[57] **Constitutional Law** 🔑 Duration and timing of deprivation; pre- or post-deprivation remedies

Due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard; to comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner. U.S. Const. Amend. 14.

Ottawa Circuit Court, LC No. 23-007346-PZ

Before: Swartzle, P.J., and K. F. Kelly and Murray, JJ.

**Opinion**

K. F. Kelly, J.

**\*1** Petitioner appeals by right the trial court's order denying his petition to be relieved of the requirement to register with the Michigan sex offender registry under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* Respondent was convicted by an Iowa court of committing lascivious acts with a child, contrary to Iowa Code § 709.8. This case presents the question of whether respondent's release from registry requirements in Iowa comes with a corresponding requirement that respondent be relieved of his registry requirements in Michigan. Because we conclude that it does not, we affirm the trial court's order.

I. BASIC FACTS AND PROCEDURAL HISTORY

In approximately 2007 or 2008—the exact date is not apparent in the record—respondent traveled to Iowa for a hunting trip. While patronizing the bar at the hotel he was staying at, respondent met the victim, a 15-year-old girl. Respondent and the victim had sexual intercourse, and respondent claimed he did not know her true age until afterwards. Petitioner was arrested within days of the encounter.

On January 12, 2009, petitioner was convicted by an Iowa court of lascivious acts with a child under Iowa Code § 709.8(3).[1] Petitioner pleaded guilty and was not incarcerated, but rather served a sentence of probation in the state of Michigan until he was released on January 12, 2012. Petitioner later filed a petition, along with letters of support from his sentencing judge, prosecuting attorney, investigating officer, and original probation officer in Iowa district court in an effort to be relieved of that state's requirements for sex offender registration. On December 11, 2017, the Iowa district court entered an order granting the petition and allowing for petitioner to be removed from Iowa's sex offender registry.

On July 13, 2023, petitioner filed a petition for removal from Michigan's sex offender registry. Petitioner explained that he was initially required to register under MCL 28.723(1)(d) because he was subject to registration in another state but argued that he was no longer required to register in Michigan because he was no longer required to register in Iowa. Petitioner also asserted that he was not required to register as a Tier-II offender, see MCL 28.722(t)(*xiii*), on the ground that there was no Michigan crime that was substantially similar to the crime underlying his Iowa conviction. Finally, petitioner asserted that requiring his continued registration with the Michigan sex offender registry violated the Full Faith and Credit Clause of the United States Constitution, the Equal Protection Clause of the United States Constitution, and his right against cruel or unusual punishment under the Michigan Constitution.

At the hearing on the petition, petitioner explained that his successful campaign to be removed from the Iowa registry had received support from the Iowa authorities involved in that conviction. The prosecution argued that petitioner should

not be removed from the Michigan sex offender registry because he still had a sex-crime conviction on his record and that only an expungement of petitioner's conviction, not mere removal from the Iowa registry, would entitle him to removal from the Michigan registry. At the end of the hearing, the trial court took the petition under advisement.

**\*2** On October 26, 2023, the trial court entered an opinion and order denying the petition. The court concluded that petitioner was required to register with the Michigan sex offender registry because he was convicted of a crime in Iowa that was substantially similar to a Michigan crime requiring registration in this state. The trial court noted that "substantially similar" is not defined under SORA and, after consulting a dictionary, stated that " 'substantial' means 'being largely but not wholly that which is specified,' while 'similar' means 'having characteristics in common; alike in substance or essentials,' with synonyms including 'comparable,' 'alike,' 'analogous,' and 'resembling.' " The trial court determined that the crime underlying petitioner's Iowa conviction, lascivious acts with a child, was substantially similar to the Michigan crime of accosting a child for immoral purposes, MCL 750.145a, thus requiring petitioner to register under SORA.

The court also held that the Full Faith and Credit Clause does not require a Michigan court to remove petitioner from Michigan's sex offender registry because, although Michigan courts must recognize the validity of Iowa judgments, Michigan law and courts, not Iowa's, determine who is subject to Michigan's SORA requirements. Finally, in a combined analysis, the trial court determined that petitioner was not subjected to cruel or unusual punishment, or equal-protection violations, because this Court has held that sex offender registration did not constitute criminal punishment. This appeal followed.

## II. STANDARDS OF REVIEW

 **[1]**  **[2]**  **[3]** "This Court reviews de novo constitutional issues and questions of statutory interpretation." *People v Wiley*, 324 Mich App 130, 150, 919 N.W.2d 802 (2018). The goal of statutory interpretation "is to give effect to the Legislature's intent, focusing first on the statute's plain language." *People v Pinkney*, 501 Mich. 259, 268, 912 N.W.2d 535 (2018). "In every case requiring statutory interpretation, we seek to discern the ordinary meaning of the language in the context of the statute as a whole." *People v Allen*, 507 Mich. 597, 604, 968 N.W.2d 532 (2021). "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase." *People v Rea*, 500 Mich. 422, 428, 902 N.W.2d 362 (2017).

 **[4]**  **[5]**  **[6]**  **[7]**  **[8]** "Statutes are presumed to be constitutional unless their unconstitutionality is readily apparent. A party challenging the constitutionality of a statute has the burden of proving its unconstitutionality." *People v Sands*, 261 Mich App 158, 160, 680 N.W.2d 500 (2004) (citation omitted). "A party challenging the facial validity of a statute must show that no circumstances exist under which it would be valid." *Id.* This Court reviews de novo a challenge that a statute is void for vagueness when the challenge is not made under the First Amendment. *People v Dillon*, 296 Mich App 506, 510, 822 N.W.2d 611 (2012). "To evaluate a vagueness challenge, this Court must examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v Hrlic*, 277 Mich App 260, 263, 744 N.W.2d 221 (2007).

## III. ANALYSIS

### A. SUBSTANTIALLY SIMILAR OFFENSE

Petitioner first argues that the trial court erred when it denied his petition because he was not convicted of a crime that is substantially similar to a Michigan crime. Thus, petitioner argues that under MCL 28.722, he is not required to register under Michigan's reporting regime. We disagree.

Petitioner's Iowa conviction required him to register as a Tier-II offender. MCL 28.723, in pertinent part, states as follows:

> (1) Subject to subsection (2), the following individuals who are domiciled or temporarily reside in this state or who work with or without compensation or are students in this state are required to be registered under this act:
>
> (a) An individual who is convicted of a listed offense after October 1, 1995.
>
> **\*3**
> * * *
>
> (d) An individual from another state who is required to register or otherwise be identified as a sex or child offender or predator under a comparable statute of that state.

Under MCL 28.722,

(t) "Tier II offense" means 1 or more of the following:

(*i*) A violation of section 145a of the Michigan penal code, 1931 PA 328, MCL 750.145a.

* * *

(*xiii*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*xii*) under a law of the United States that is specifically enumerated in 34 USC 20911, under a law of any state or any country, or under tribal or military law.

There is no dispute that petitioner was convicted of an offense committed after October 1, 1995. The trial court determined that petitioner was a Tier-II offender because he was convicted of an offense, lascivious acts with a child, Iowa Code § 709.8, that is substantially similar to accosting a minor for immoral purposes, MCL 750.145a, which is listed as a Tier-II offense under MCL 28.722(t)(*i*). Tier-II offenders are required to register under SORA for 25 years. MCL 28.725(12).

When petitioner was convicted of lascivious acts with a child, Iowa Code § 709.8 stated:[2]

It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:

1. Fondle or touch the pubes or genitals of a child.

2. Permit or cause a child to fondle or touch the person's genitals or pubes.

3. Solicit a child to engage in a sex act or solicit a person to arrange a sex act with a child.

4. Inflict pain or discomfort upon a child or permit a child to inflict pain or discomfort on the person.

Any person who violates a provision of this section involving an act included in subsection 1 or 2 shall, upon conviction, be guilty of a class "C" felony. [Iowa Code § 709.8, as amended by Iowa Acts 2005 (81 GA) ch. 158.]

In *State v Propp*, 532 N.W.2d 784, 786 (Iowa. 1995), the Iowa Supreme Court set forth the elements of § 790.8(3) as: (1) the defendant, with or without consent, solicited the victim to engage in a sex act; (2) the defendant intended to arouse or satisfy sexual desires; (3) the defendant was at least of the statutorily specified age (now 16 years); (4) the victim was under the statutorily specified age (now simply "a child"); and (5) the defendant and victim were not presently married. *Id.* In the context of § 790.8(3), "solicitation" takes place when one " 'commands, entreats, or otherwise attempts to persuade another ....' " *Propp*, 532 N.W.2d at 786, quoting Iowa Code § 705.1.

[9] [10] [11] MCL 750.145a similarly states:

A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

*4 MCL 750.145a contains alternative elements because the crime can be committed by accosting, enticing, or soliciting a child with intent to induce or force the child to commit a proscribed act, or by encouraging a child to commit a prescribed act. *People v Kowalski*, 489 Mich. 488, 499, 803 N.W.2d 200 (2011). The prosecution may secure a conviction under MCL 750.145a by proving that the defendant "(1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act." *Kowalski*, 489 Mich. at 499, 803 N.W.2d 200. The prosecution may alternatively prove that the defendant "(1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act." *Id.*

[12] [13] Petitioner advocates using the "categorical approach" to determine whether two crimes are substantially similar for purposes of SORA. Under the categorical approach, a court may not consider the actual facts of the defendant's conduct underlying the crime. *Descamps v United States*, 570 U.S. 254, 261, 133 S Ct 2276, 186 L.Ed.2d 438 (2013). Rather, the court must compare the elements of the

two crimes. *Id.* If a state-law crime allows for a conviction of a broader category of conduct than could support a conviction under the elements of the generic crime, then the two crimes are not alike under the categorical approach. *Id.* However, if a state-law conviction could be sustained under the generic crime and the state statute contains a smaller category of conduct than the generic crime, then the two crimes are alike. *Id.*

 [14] Petitioner contends that Michigan should adopt a strict categorical approach to comparing crimes as the United States Court of Appeals for the Sixth Circuit outlined in *United States v Barcus*, 892 F.3d 228 (6th Cir. 2018).[3] In that case, the defendant pleaded guilty in a Tennessee court to attempted aggravated sexual battery against a victim under 13 years old. *Id.* After a subsequent federal failure-to-register conviction, the issue arose whether the defendant was properly categorized as a Tier-III sex offender under the federal Sex Offender Registration and Notification Act (SORNA), 34 USC 20901 *et seq.*, on the basis that his original Tennessee conviction was of a crime that penalized a broader range of conduct than its federal counterpart under SORNA that conferred Tier-III status. *Id.* at 231. The Sixth Circuit held that employing the categorical approach was the proper test for answering the question. *Id.* at 232. Accordingly, the defendant could be classified as a Tier-III offender if the Tennessee crime penalized identical or lesser categories of conduct, but not more, than did the federal crime. *Id.* The Tennessee crime at issue did not include an element of specific intent; rather, it employed an objective test that called on the jury to determine whether the touching that took place was of the sort that would ordinarily be considered sexual in nature. *Id.* In contrast, the corresponding federal crime required the prosecution to prove the defendant's sexual intent. *Id.* The Sixth Circuit held that the two crimes were not similar and, therefore, the defendant's Tennessee conviction could not support Tier-III status under SORNA. *Id.* The court reasoned that, under the Tennessee statute, a person could be convicted who lacked specific sexual intent, so long as the conduct could be objectively characterized as sexual, whereas the federal statute, by having a specific-intent element, required the higher quantum of proof. *Id.* at 233. The Tennessee statute therefore covered broader conduct than did the federal statute. *Id.* Accordingly, the offenses were not alike under the categorical approach and the defendant could not properly be categorized as a Tier-III offender. *Id.*

 *5 Neither this Court nor the Michigan Supreme Court have considered what approach should be employed to determine whether an out-of-state conviction is substantially similar to a Michigan offense for purposes of SORA registration. In this case, it would lead to an absurd result to enforce a strictly categorical approach for determining what crimes under SORA are substantially similar. Iowa Code § 709.8 does not apply when the defendant and victim are married, whereas MCL 750.145a does not provide a marriage exception. Therefore, MCL 750.145a covers broader conduct than does Iowa Code § 709.8. Accordingly, under a strictly categorical approach such as that endorsed by *Barcus*, no Michigan crime could ever be substantially similar to Iowa Code § 709.8 unless it contained a marriage exception. Presumably, the Legislature did not intend to shield sex offenders from registration requirements on the basis of an arbitrary provision in a statute, such as one recognizing child marriage.

In an analogous context, in *People v Crews*, 299 Mich App 381, 388, 829 N.W.2d 898 (2013), this Court addressed how courts are to decide whether a Michigan crime corresponds to the crime of another state for the purpose of scoring prior record variables during criminal sentencing. MCL 777.51(2)(b) requires that a defendant be assessed points for a felony conviction "under a law of the United States or another state corresponding to a crime listed in offense class M2, A, B, C, or D." Specifically, we considered whether Ohio's second-degree burglary statute, Ohio Rev Code Ann 2911.12(A)(2), corresponded with Michigan's home-invasion statute, MCL 750.110a. *Id.* at 392, 829 N.W.2d 898. Taking the plain definition of the terms, the Court determined that "correspond" is defined as "similar or analogous." *Id.* at 391, 829 N.W.2d 898.

Applying that definition, the Court first noted that the Legislature's intent to proscribe the same broad category of conduct as that covered by the out-of-state statute is insufficient to find that two crimes correspond and held that the elements of the two offenses must be compared. *Id.* at 392, 829 N.W.2d 898. We concluded that "[t]he plain meaning of 'correspond' does not require statutes to mirror each other under all circumstances; rather, it requires only that statutes be analogous or similar, meaning that they have 'qualities in common.' " *Id.* at 396, 829 N.W.2d 898. We explained:

> Different states often have analogous laws describing essentially the same crime(s), while the specific statutory language used to define those crimes often differs from state to state. Requiring that the offenses match or agree almost exactly would contravene the apparent intent of the Legislature, which is to permit scoring of all convictions

for offenses in the listed classes and any analogous offenses committed in another state. Clearly, the goal of the "corresponding" requirement is to ensure that convictions for out-of-state crimes and in-state crimes under statutes that seek to prevent the same harm are scored in the same category. Thus, the Legislature could not have intended that minor differences between the wording of a Michigan criminal statute and its analog in a different state would result in the out-of-state conviction's not being counted as a prior offense if the two statutes address the same type of conduct. [*Id.* at 391, [829 N.W.2d 898].]

[15] [16] Petitioner asserts that the two offenses are not substantially similar because there is no specific-intent requirement to the Iowa offense. We find this argument unpersuasive, however, because the Court of Appeals of Iowa has treated the crime of lascivious acts with a child as a specific-intent crime. *State v Kingery*, 924 N.W.2d 533 (Iowa App, 2018) (table, unpublished disposition); 2018 WL 3650352 at *3. The specific-intent element of that crime is plain from the elements. The prosecution must prove an intent to arouse or satisfy sexual desires. Iowa Code § 709.8. In Michigan, a conviction of accosting a minor for immoral purposes requires proof that the defendant intended "to induce or force that child to commit" a proscribed act. *Kowalski*, 489 Mich. at 499, 803 N.W.2d 200.

*6 The statutes are substantially similar because all of the material elements of the crimes correspond. The elements of solicitation common to the two offenses are similar, as are the elements that the victim be a child and the defendant an adult. That the solicitation must be to engage in a sex act under the Iowa Code also corresponds to solicitation of "an immoral act," "an act of sexual intercourse," "an act of gross indecency," or "any other act of depravity or delinquency" under MCL 750.145a. Therefore, the elements are substantially similar for purposes of SORA.

It is implausible that the Legislature intended to shield from sex offender registration someone who has solicited sex acts from a child on the basis that the state in which the crime was committed still allowed child marriage. If under the Iowa statute petitioner and his victim were, in fact, married, petitioner would not have faced conviction, and there would be no offense to compare with a Michigan crime. It follows that slight variations in other elements do not relieve a person convicted as a sex offender in another state from registration requirements when the substance of the Michigan and out-of-state offenses is substantially the same. Moreover, petitioner has not shown that the categorical approach to comparing crimes for purposes of SORNA, as adopted by the Sixth Circuit in *Barcus*, is based on a constitutional imperative. Rather, it appears that the strictly categorical approach is simply what is favored by federal courts. See *Descamps*, 570 U.S. at 267, 133 S.Ct. 2276, citing *Taylor v United States*, 495 U.S. 575, 600-601, 110 S Ct 2143, 109 L Ed 2d 607 (1990); *Barcus*, 892 F.3d at 232, citing *United States v White*, 782 F.3d 1118, 1132-1134 (10th Cir. 2015). Therefore, a person such as petitioner who is convicted of lascivious acts with a child under Iowa Code § 709.8 is subject to sex offender registration requirements as a Tier-II offender in Michigan, and the trial court did not err when it determined that Iowa's statute concerning lascivious acts with a child, Iowa Code § 709.8(3), and Michigan's accosting a minor for immoral purposes, MCL 750.145a, are substantially similar.

B. FULL FAITH AND CREDIT

Next, petitioner argues that he should be removed from the Michigan sex offender registry under the Full Faith and Credit Clause and the Uniform Enforcement of Foreign Judgments Act, MCL 691.1171 *et seq.* According to petitioner, once the Iowa courts ordered him removed from the Iowa sex offender registry, those constitutional and statutory provisions required that he be removed from the Michigan registry as well. We disagree.

[17] The Full Faith and Credit Clause of the United States Constitution, U.S. Const., art. 4, § 1, requires the courts of each state to honor the actions of another state's courts. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 620, 692 N.W.2d 388 (2004). Under U.S. Const., art. 4, § 1,

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof.

[18] [19] [20] "A judgment entered in another state is presumptively valid and subject to recognition in Michigan under the Full Faith and Credit Clause, which requires that a foreign judgment be given the same effect that it has in the state of its rendition." *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 215-216, 813 N.W.2d 752 (2011) (quotation marks, citations, and alteration brackets omitted). "The purpose of the Full Faith and Credit Clause is to prevent

the litigation of issues in one state that have already been decided in another." *LME v ARS*, 261 Mich App 273, 285, 680 N.W.2d 902 (2004) (quotation marks and citation omitted). Typically, only a jurisdictional defect will allow a court to entertain a collateral attack on a court order from another state. *Blackburne & Brown Mtg. Co.*, 264 Mich App at 621, 692 N.W.2d 388.

**\*7** Michigan has codified the requirements of the Full Faith and Credit Clause under the Uniform Enforcement of Foreign Judgments Act. MCL 691.1172 defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state."

> A copy of a foreign judgment authenticated in accordance with an act of congress or the laws of this state may be filed in the office of the clerk of the circuit court, the district court, or a municipal court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner. [MCL 691.1173.]

 **[21]**   A foreign judgment "is treated as a Michigan judgment and Michigan law applies to its enforcement." *Peabody v DiMeglio*, 306 Mich App 397, 404, 856 N.W.2d 245 (2014). However, the United States Supreme Court has explained that states are not required to "adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments," because "[e]nforcement measures do not travel with the sister state judgment as preclusive effects do" even as "such measures remain subject to the evenhanded control of forum law." *Baker v Gen. Motors Corp.*, 522 U.S. 222, 235, 118 S Ct 657, 139 L Ed 2d 580 (1998).

 **[22]**   Petitioner argues that, once he was relieved of the requirement to register with Iowa's sex offender registry, the order entered by the Iowa court to that effect precluded Michigan from requiring petitioner to continue to register with the Michigan registry. This argument is unavailing, however, because the two registration requirements are independent of one another. Although a person may be required to register with Michigan's sex offender registry on the basis of being required to register with another state's sex offender registry, see MCL 28.723(1)(d); MCL 28.724(6)(d), petitioner was required to register in Michigan under MCL 28.723(1)(d), because he has been domiciled in Michigan and was convicted of a listed offense. In other words, petitioner's sex offender registration requirement in Michigan stems from his *Iowa conviction* and not his *Iowa registration requirement*.

Despite that both registration requirements stemmed from the Iowa conviction, petitioner faced separate registration requirements in each state. A Michigan court must, absent a jurisdictional defect, recognize as valid the Iowa criminal judgment entered against petitioner. Michigan must also recognize the Iowa order removing petitioner from that state's sex offender registry. Moreover, under the Full Faith and Credit Clause, a Michigan court may not modify a determination of an Iowa court regarding that state's sex offender registry requirements, just as an Iowa court may not modify a determination of a Michigan court regarding this state's sex offender registry.

The Iowa judgment against petitioner and his registry obligation in that state followed him into Michigan. However, under *Baker*, 522 U.S. at 235, 118 S.Ct. 657, Iowa may not force Michigan to conform to that state's laws regarding the enforcement of that judgment. As a result of his Iowa conviction, Michigan's SORA independently requires petitioner to register with the sex offender registry of this state. An Iowa court may not modify the terms or application of Michigan's SORA through a decision regarding the enforcement of Iowa's sex offender registry laws. Therefore, the trial court did not err when it denied the petition on the basis of the Full Faith and Credit Clause.

### C. CRUEL OR UNUSUAL PUNISHMENT

 **\*8** Petitioner also argues that requiring him to remain subject to Michigan's SORA requirements violates the prohibition against cruel or unusual punishment. Petitioner contends that requiring him to report as a sex offender is excessively harsh considering the gravity of the offense and fails to advance the goals of rehabilitation. We disagree.

 **[23]**   The United States Constitution prohibits "cruel and unusual" punishments. U.S. Const., Am. VIII. Similarly, the Michigan Constitution prohibits "cruel or unusual" punishments. 1963 Const., art. 1, § 16. Michigan's prohibition of cruel *or* unusual punishment is considered to provide broader protections than the federal counterpart prohibiting cruel *and* unusual punishments. *People v Stovall*, 510 Mich.

301, 314, 987 N.W.2d 85 (2022). Accordingly, if a sentence is constitutional under Michigan's standard, it is constitutional under the Eighth Amendment as well. *People v Costner*, 309 Mich App 220, 232, 870 N.W.2d 582 (2015).

[24] [25] The determination whether a statute imposes a cruel or unusual punishment involves a two-step inquiry. *People v Lymon*, ––– Mich –––, –––– – ––––; ––– N.W.3d ––––, 2024 WL 3573528 (2024) (Docket No. 164685); slip op. at 9-10. The first assesses whether the statute imposes a criminal punishment as opposed to some civil regulatory burden. *Id.* If the statute imposes criminal punishment, then the second step is to determine whether the punishment is cruel or unusual. *Id.* The latter inquiry concerns whether the punishment is so "grossly disproportionate" that it is unconstitutional. *People v Bullock*, 440 Mich. 15, 34 n 17, 485 N.W.2d 866 (1992).

[26] Petitioner's challenge fails at the first step of the inquiry. In *People v Kiczenski*, ––– Mich App –––, ––––; ––– N.W.3d ––––, 2024 WL 4595174 (2024) (Docket No. 364957); slip op. at 12, this Court determined that sex offender registration under the 2021 SORA amendments did not impose a criminal punishment on offenders convicted of sex-related offenses. In that case, the defendant was convicted of two counts of first-degree sexual conduct, MCL 750.520b(1)(d)(*ii*), and became subject to SORA's reporting requirements when they took effect in 1995. *Kiczenski*, ––– Mich App at ––––, ––– N.W.3d ––––; slip op. at 1. After the defendant was released from prison, he filed a motion contending that the amendments to SORA constituted ex post facto punishment. *Id.* at ––––, ––– N.W.3d ––––; slip op. at 2.

On appeal from the trial court's denial of his motion, this Court affirmed, explaining that considerations for determining whether a statute imposes a criminal punishment include:

> (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose. [*Id.* at ––––, ––– N.W.3d ––––; slip op. at 1 (quotation marks and citation omitted).]

The Court concluded that the first three factors generally weighed in favor of determining that registration under the 2021 SORA amendments constituted punishment. *Id.* at –––– – ––––, ––– N.W.3d ––––; slip op. at 7-8. The Court next concluded that the fourth factor weighed strongly in favor of determining that sex offender registration was nonpunitive because it has a close connection with the legislative goal of providing for public safety by alerting members of the public to the location of sex offenders. *Id.* at –––– – ––––, ––– N.W.3d ––––; slip op. at 8-9. Regarding the fifth factor, the Court concluded that sex offender registration for those who actually committed sex offenses was not excessive, reasoning that the sex offender label was then accurate, noted that the most onerous registration requirements—particularly the school-safety zones—had been repealed, and held that registration was reasonable in light of the legislative goal of promoting public safety. *Id.* at –––– – ––––, ––– N.W.3d ––––; slip op. at 10-12. Weighing all the factors, this Court determined that sex offender registration under the 2021 SORA amendments does not impose a criminal punishment on sex offenders. *Id.* at ––––, ––– N.W.3d ––––; slip op. at 12. Thus, the Court concluded that the defendant failed to carry the high burden of showing that the Legislature's intent to create a civil regulation was overcome by the punitive effects of the statute. *Id.*

*9 Under *Kiczenski*, therefore, we are bound to conclude that petitioner's registration under SORA does not constitute cruel or unusual punishment, see MCR 7.215(C)(2), and the trial court did not err when it denied the petition on the basis that SORA imposed cruel or unusual punishment on petitioner.

D. EQUAL PROTECTION

Petitioner also challenges his reporting requirements under SORA as a violation of his right to equal protection. Petitioner contends that he has a constitutional right to travel among the states, and the sex offender registration requirement infringes on his right to travel. Petitioner also argues that his right to equal protection was violated because petitioner does not have the same right to challenge his registration requirement as do other SORA registrants. We disagree.

[27] "The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law." *Wysocki v Kivi*, 248 Mich App 346, 350, 639 N.W.2d 572 (2001).

> The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment. Conversely, the Equal Protection

Clauses do not prohibit disparate treatment with respect to individuals on account of other, presumably more genuinely differentiating, characteristics. [*Heidelberg Bldg, LLC. v Dep't of Treasury*, 270 Mich App 12, 17, 714 N.W.2d 664 (2006) (citations omitted).]

 **[28]** **[29]** **[30]** "Generally speaking, legislation challenged on equal protection grounds is accorded a presumption of constitutionality ...." *Doe v Dep't of Social Servs*, 439 Mich. 650, 662, 487 N.W.2d 166 (1992). "When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity." *Shepherd Montessori Ctr. Milan v Ann Arbor Charter Twp.*, 486 Mich. 311, 318, 783 N.W.2d 695 (2010). "To be considered similarly situated, the challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Lima Twp. v Bateson*, 302 Mich App 483, 503, 838 N.W.2d 898 (2013) (quotation marks, citation, and ellipsis omitted).

 **[31]** **[32]** **[33]** **[34]** "Courts examine three factors when determining whether a law violates the Equal Protection Clause: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Barrow v City of Detroit Election Comm'n*, 301 Mich App 404, 419, 836 N.W.2d 498 (2013). "In order to perform an equal protection analysis, we must first determine which constitutional test applies, strict scrutiny or the rational basis test." *Gilson v Dep't of Treasury*, 215 Mich App 43, 50, 544 N.W.2d 673 (1996). "When state legislation creates a classification scheme that is based on suspect factors, such as race, national origin, ethnicity or alienage, or that affects a fundamental interest, courts apply a high standard of review, labeled 'strict scrutiny.' " *Wysocki*, 248 Mich App at 351-352, 639 N.W.2d 572 (citations omitted). Under strict scrutiny, "the courts require the State to demonstrate that its classification has been precisely tailored and it must serve a compelling governmental interest." *Phillips v Mirac, Inc*, 470 Mich. 415, 432, 685 N.W.2d 174 (2004).

 **\*10** **[35]** **[36]** **[37]** "The 'traditional' or 'rational basis' test represents the other polar extreme. Under this standard, courts will not strike down a statute if the classification scheme it creates is rationally related to a legitimate governmental purpose." *Wysocki*, 248 Mich App at 353, 639 N.W.2d 572. "Under this deferential standard, the burden of showing a statute to be unconstitutional is on the challenging party, not on the party defending the statute." *Shepherd Montessori Ctr Milan*, 486 Mich. at 319, 783 N.W.2d 695 (quotation marks and citation omitted). "The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review[.]" *Id.* at 318, 783 N.W.2d 695. "[A] classification will stand unless it is shown to be 'essentially arbitrary.' " *Wysocki*, 248 Mich App at 354, 639 N.W.2d 572.

 **[38]** **[39]** **[40]** **[41]** Petitioner argues that SORA infringes on his right to travel. "The constitutional right to travel" concerns "the right of free interstate migration." *Attorney Gen of New York v Soto-Lopez*, 476 U.S. 898, 902, 106 S Ct 2317, 90 L Ed 2d 899 (1986). "[T]he right to interstate travel is a fundamental right[.]" *Gilson*, 215 Mich App at 50, 544 N.W.2d 673. Accordingly, a statute affecting that right is reviewed under strict scrutiny. *Id.* "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *Barrow*, 301 Mich App at 422, 836 N.W.2d 498. When reviewing a statute that implicates the right to travel, "[e]ven a compelling state interest may be served only by means which do not burden unnecessarily the exercise of the right to travel." *People v Lewis*, 107 Mich App 277, 282, 309 N.W.2d 234 (1981).

 **[42]** According to petitioner, his right to travel was infringed upon because, if he had moved to Michigan from Iowa after his Iowa sex offender registration requirement ended, as opposed to being a Michigan resident, he would not have been required to register with Michigan's sex offender registry. Therefore, petitioner argues, his equal-protection rights were violated because he was burdened with sex offender registration requirements in Michigan on the basis that he lived in Michigan rather than completing his Iowa registration requirement while living in Iowa.

We disagree that petitioner's right to travel was implicated in this case. Petitioner does not appear to have changed his domicile during, or following, any of the Iowa proceedings. According to petitioner's testimony at the hearing on the petition, he has been a lifelong resident of west Michigan and immediately returned to the state after being arrested and posting bond in Iowa. Thereafter, petitioner spent time in Iowa for his court hearings. After his conviction, petitioner immediately returned to, and resided in, Michigan. Petitioner was allowed to serve his Iowa probation in Michigan,

where he remained throughout the term. Petitioner has not explained how his sex offender registration requirements actually impacted any travel.

One basis for being required to register under SORA is that the person is domiciled or temporarily residing in Michigan and while required to register with another state's sex offender registry. MCL 28.723(1)(d); MCL 28.724(6)(d). However, that was never the sole basis under which petitioner was required to register under SORA in Michigan. Although those provisions applied to petitioner while he was actively required to register in Iowa, he has also always been required to register in Michigan under MCL 28.723(1)(d) as one domiciled in Michigan who was convicted of an offense in another state that was substantially similar to a Michigan offense requiring registration. Under the circumstances, the record does not show that Michigan's sex offender registration requirements ever affected petitioner's interstate travel. Any potential equal-protection violations regarding how SORA might infringe on the right to travel are only matter of speculation. Accordingly, petitioner is not entitled to relief on this basis.

**\*11** [43] Finally, petitioner argues that his equal-protection rights were violated because he did not have a statutory right to directly petition for removal from the sex offender registry. According to petitioner, SORA violates the Equal Protection Clauses because only Tier-I and juvenile offenders, but not Tier-II or Tier-III offenders, have a right to petition for removal. Under MCL 28.728c(1), a Tier-I offender may petition for removal 10 years after being released from confinement if that person meets certain criteria, including having not committed any new felonies or sex offenses, having successfully completed any period of probation or parole, and having successfully completed a sex offender treatment program. Under MCL 28.728c(3), certain juvenile sex offenders may petition for removal if they fall into particular categories regarding age and the severity of their offenses.

Because the registry's tier-classification system is not based on a suspect classification regime, rational basis is the appropriate standard of review for petitioner's challenge. See Wysocki, 248 Mich App at 353, 639 N.W.2d 572. Accordingly, the system passes constitutional muster unless the classifications are deemed arbitrary. Id. at 354, 639 N.W.2d 572. Petitioner argues that his inability to petition for removal from the sex offender registry—when he allegedly has completed all the requirements that would allow him to do so if he were a Tier-I offender—means that he is not given the same opportunities as other similarly situated offenders. But petitioner has not established that he is similarly situated to those who may petition for removal, and therefore he has not exposed any arbitrariness in the tier-classification regime.

[44] [45] Offenders are placed into tiers solely on the basis of the seriousness of their offenses. Classifying offenders on the basis of the seriousness of their offenses in order to require longer registration periods for those who committed more serious crimes has a reasonable basis relating to alerting the public to potential dangers. The societal imperative of preventing sex crimes, and addressing it by alerting the public to potentially dangerous individuals, presents a practical problem that justifies rough accommodations, even ones that appear less than scientific. See *Dandridge v Williams*, 397 U.S. 471, 485, 90 S Ct 1153, 25 L Ed 2d 491 (1970). It is reasonable for the Legislature to draw lines regarding the length of reporting requirements, including who may petition for early removal, to further the goals of rehabilitation and public safety. A classification system based on the seriousness of offenses does not amount to the type of arbitrary classification that violates equal protection. Although the lines drawn by the Legislature may look arbitrary in certain applications, it does not follow that the drawing of the lines fails rational basis review. The Legislature may draw a distinction between classes of persons so long as the classification is not "arbitrary or invidious," *Heidelberg Bldg LLC*, 270 Mich App at 17-18, 714 N.W.2d 664, and the classification scheme is rationally related to a legitimate governmental purpose, *Wysocki*, 248 Mich App at 353, 639 N.W.2d 572. To classify offenders, and prescribe registration requirements on the basis of the seriousness of the offense, is rationally related to a legitimate governmental purpose. See *Wysocki*, 248 Mich App at 353, 639 N.W.2d 572. Therefore, petitioner has not shown that SORA's petition process presents an equal-protection violation, and the trial court did not err when it denied petitioner's request to be removed from SORA's reporting regime.

E. UNPRESERVED CONSTITUTIONAL ISSUES

[46] [47] Petitioner also raises various constitutional challenges to his reporting requirement that were not raised in the trial court and are, therefore, not preserved for appeal. See *Tolas Oil & Gas Exploration Co. v Bach Servs. & Mfg., LLC*, 347 Mich App 280, 294, 14 N.W.3d 472 (2023). Failure to properly preserve an issue for appeal results in waiver of that

issue. *Id.* However, "[t]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* at 289-290, 14 N.W.3d 472 (quotation marks omitted). In this case, because the unpreserved issues present questions of law for which all necessary facts are presented, we will briefly address petitioner's unpreserved arguments.

 *12  [48]  [49]  [50] Petitioner first contends that his Michigan sex offender registration requirement constitutes an ex post facto punishment in violation of U.S. Const., art. I, § 10, cl 1; Const. 1963, art. 1, § 10, because his Michigan requirement continues after his Iowa requirement has ended. "The critical question for an ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date." *Wiley*, 324 Mich App at 152, 919 N.W.2d 802 (alteration brackets omitted). "A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a committed crime; or (4) allows the prosecution to convict on less evidence." *People v Betts*, 507 Mich. 527, 542, 968 N.W.2d 497 (2021) (alteration brackets omitted). However, as discussed above, petitioner cannot show that his registration requirements under SORA were criminal punishment subjecting SORA to ex post facto analysis. See *Kiczenski*, ––– Mich App at ––––, ––– N.W.3d ––––; slip op. at 12. Accordingly, this claim must fail.

 [51]  [52]  [53]  [54]  [55] Petitioner also argues that MCL 28.722(t)(*xiii*) is unconstitutionally vague. There are three grounds on which a statute may be determined unconstitutionally vague: "(1) it is overbroad, impinging on First Amendment freedoms, (2) it fails to provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unlimited and unstructured discretion on the trier of fact to determine whether an offense has occurred." *Hrlic*, 277 Mich App at 263, 744 N.W.2d 221. "A vagueness challenge must be considered in light of the facts at issue." *Sands*, 261 Mich App at 161, 680 N.W.2d 500. "To afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Hrlic*, 277 Mich App at 263, 744 N.W.2d 221 (quotation marks and citation omitted). "For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Dillon*, 296 Mich App at 511, 822 N.W.2d 611.

Petitioner had fair notice that he could be subjected to Michigan's sex offender registry requirements before committing his offense. SORA provides fair notice that soliciting a minor for sex is an offense that requires registration. MCL 28.722(t)(*i*) clearly states that a conviction of a violation of MCL 750.145a leaves a Tier-II offender. Under MCL 750.145a, it is plain that one who solicits sex from a person under the age of 16 is guilty of a crime. MCL 28.722(t)(*xiii*) makes clear that someone who violates a law of another state that is substantially similar to MCL 750.145a is a Tier-II offender, and MCL 28.725(12), and that a Tier-II offender must register under SORA. Under the circumstances, it cannot reasonably be said that petitioner lacked fair notice that the conduct at issue would lead to sex offender registration in Michigan. Moreover, MCL 28.722(t)(*xiii*) did not grant the trial court unlimited or unstructured discretion to decide whether the two crimes are substantially similar. Rather, the court applied the statute on the basis of its plain language. MCL 28.722(t)(*xiii*) does not lend itself to more than one interpretation, let alone one that would allow a trial court to arbitrarily decide whether two crimes are substantially similar.

 [56]  [57] Finally, petitioner argues that the process by which he was required to register with the sex offender registry violated his due-process rights. "[D]ue process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard. To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Bonner v Brighton*, 495 Mich. 209, 235, 848 N.W.2d 380 (2014) (quotation marks and citation omitted). Although, presumably, the State Police initially determined that petitioner must register in Michigan on the basis of his Iowa conviction, petitioner's inability to participate in those "proceedings" ultimately did not prejudice him. See *Carines*, 460 Mich. at 763, 597 N.W.2d 130. Petitioner was heard before a neutral body, the trial court, which did not merely rubberstamp the decision of the State Police, but rather conducted its own analysis considering whether lascivious acts with a child is substantially similar to accosting a child for immoral purposes, and correctly determined that the two crimes are, in fact, substantially similar such that petitioner is required to register on that basis.[4] Accordingly, petitioner's due-process claim fails as well.

**\*13** Affirmed.

Swartzle, P.J. (concurring in part, dissenting in part).

I concur in the result only, and I specifically dissent with respect to Part III.A of the majority opinion. Although I have no row with the majority's application of its preferred "correspondence" test, I do not think we need to land definitively on that test as the proper one here. This is because, when properly applied, the alternative test considered by the majority—the so-called "categorical" test used by federal courts—yields the same result: petitioner must register under Michigan's Sex Offenders Registration Act (SORA), MCL 28.721 et seq.

I will be brief: The majority aptly describes the categorical test, as it has been developed in the federal courts. As applied here, to determine whether a qualifying Tier II offense under Michigan law is "substantially similar" (or, per federal terminology, "comparable") to the Iowa offense of which petitioner was convicted, the elements of the two offenses are lined up and compared to each other. Mathis v United States, 579 U.S. 500, 504-505, 136 S Ct 2243, 195 L Ed 2d 604 (2016). If the crime of conviction (Iowa) "covers any more conduct" than the generic (Michigan) offense, then the two crimes are not substantially similar/comparable. United States v Barcus, 892 F.3d 228, 233 (6th Cir. 2018) (internal quotation marks omitted). Conversely, if the crime of conviction (Iowa) covers the same conduct, or is narrower in its sweep, then the crime of conviction (Iowa) is substantially similar/comparable to the generic (Michigan) offense for purposes of SORA registration. Id. at 232. The underlying facts of the Iowa conviction are not relevant in this analysis; rather, this is a structural, elements-based approach.

Properly applying this categorical test, the Iowa conviction sweeps *more narrowly* than the Michigan offense. As the majority explains, the relevant elements of the two offenses correspond as to specific intent; proscribed act; solicitation; and victim as child. But, at the time of conviction, the Iowa offense excluded the circumstance when the two persons were married. Thus, all of the elements of the Iowa offense could be satisfied, but if the two persons were married, then the Iowa statute had not been violated. In Michigan, there is no marriage exception; thus, the Michigan offense is necessarily broader in scope than its Iowa counterpart, as Michigan sweeps in persons regardless of their marital status. In the relevant Venn diagram, Michigan's MCL 750.145a completely encompasses Iowa's § 709.8(3), as those statutes have been interpreted and applied by courts.

Thus, if someone had violated Iowa's statute, then that person would know with logical certainty that the person would have likewise violated Michigan's statute, had the activity occurred within the latter's jurisdiction. In this way, the person is on fair notice that, if the person decides to reside in Michigan, then the person will need to abide by Michigan's laws with respect to that offense, including SORA registration.

The majority recognizes that Michigan's offense (the "generic offense") sweeps more broadly than the Iowa offense (the "offense of conviction"). But then the majority inexplicably concludes that "no Michigan crime could ever be substantially similar to Iowa Code § 709.8 unless it contained a marriage exception." Maj op at ——. But, this flips the analysis on its head—it is precisely the marriage exception that confirms, with logical certainty, that the Iowa offense is more narrow than the Michigan offense and, as a result, Michigan's offense completely encapsulates the Iowa offense. Under the categorical approach, this means that the offenses *are* substantially similar/comparable, at least from the viewpoint relevant to *Michigan*'s SORA registration. See, e.g., Descamps v United States, 570 U.S. 254, 257, 133 S Ct 2276, 186 L Ed 2d 438 (2013) ("The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."); Barcus, 892 F.3d at 232 ("If the elements of the Tennessee aggravated sexual battery statute are the same as the [federal] Tier III requirements, or are defined more narrowly, then the Tennessee conviction is classified as a Tier III offense."); United States v Berry, 814 F.3d 192, 195-196 (4th Cir. 2016) ("If the elements of the prior offense [of conviction] are the same as, or narrower than, the [generic] offense listed in the federal statute, there is a categorical match." (internal quotation marks omitted)).

**\*14** It is entirely possible that, in a hypothetical case that mirrors this one—a Michigan conviction, a petitioner who moves to Iowa, and then a question of *Iowa*'s registration requirements—an Iowa court would conclude that the two statutes are not substantially similar/comparable. But, that is because, from that court's perspective, the Iowa offense (the generic one in this hypothetical) would be the narrower one, and the offense of conviction, the Michigan one, would sweep more broadly. How an Iowa court would treat a hypothetical Michigan conviction is, however, irrelevant to our consideration.

In sum, the majority correctly describes the federal courts' categorical test, but then goes on to misapply it. As explained here, the result of the categorical test is the same as the result of the test adopted by the majority—petitioner must register under SORA. Accordingly, this panel need not have decided which test is the preferred one. The categorical approach has, in fact, several worthwhile features, including precision and predictability. I would have preferred that the matter be decided in a published decision when it was outcome determinative, or, at least, when the question was subject to the crucible of adversarial testing, whereas here the People did not file a brief or participate in oral argument.

Concluding that petitioner's remaining arguments are without merit as applied to these particular circumstances, I concur in the result reached by the majority.

**All Citations**

--- N.W.3d ----, 2025 WL 825907

Footnotes

1   Petitioner was convicted under a predecessor version of the statute, Iowa Code § 709.8, as amended by Iowa Acts 2005 (81 GA) ch. 158. There are no substantive differences between the two versions of the statute.

2   The current version of the statute does not have any substantive differences from the 2005 amendments. Petitioner's crime of conviction is currently codified as Iowa Code § 709.8(1)(d).

3   "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich. 603, 607, 677 N.W.2d 325 (2004).

4   Plaintiff relies on *-Does v Whitmer,* —— F Supp 3d ——, —— – ——, 2024 WL 4340707 (ED Mich 2024) (Case No. 22-cv-10209); slip op. at 79-80, a case where the federal district court concluded that the process used to determine whether out-of-state offenders must register on the basis of having committed a substantially similar offense violated due process because the out-of-state offender has no notice or opportunity to be heard. While we acknowledge that *Does* came to the opposite conclusion than we do here, we are not bound by that decision, *Abela*, 469 Mich. at 607, 677 N.W.2d 325, and as explained, ultimately disagree that plaintiff's due process rights were violated. Moreover, the reasoning in *Does* has already been rejected by this Court on other grounds. See *Kiczenski*, —— Mich App at —— – ——, —— N.W.3d ——; slip op. at 12-13 (disagreeing with *Does* that imposition of SORA constituted punishment for purposes of the ex post facto analysis). But even if we agreed with the reasoning in *Does*, as explained, plaintiff failed to show that the trial court committed plain error, and his challenge must therefore fail.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.